UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Jose Alonso Miranda-Vazquez,

Petitioner

v.

Pamela Bondi, et al.,

Respondents[1]

Case No. 2:26-cv-00562-CDS-DJA

**Order Granting in Part the Petitioner's Writ of Habeas Corpus and Denying the Respondents' Motion to Dismiss**

[ECF Nos. 10, 12]

Petitioner Jose Alonso Miranda-Vazquez filed his first amended petition for writ of habeas corpus on March 31, 2026. First am. pet., ECF No. 10. The respondents filed a response on April 14, 2026. *See* Resp., ECF Nos. 11, 13.[2] That same day, the federal respondents filed a motion to dismiss. Mot., ECF No. 12. The petitioner filed an opposition. *See* Opp'n, ECF No. 14.[3] For the reasons set forth herein, the petitioner's first amended petition is granted in part, and the respondents' motion to dismiss is denied.

I.    Background[4]

Miranda-Vazquez is a citizen of Mexico and has lived in the United States since 1985. ECF No. 10 at 2–3; ECF No. 11 at 1; I-865 Form, Resp'ts' Ex. A, ECF No. 11-1 at 6. He was taken into ICE custody on July 19, 2025, following his arrest by the Las Vegas Metropolitan Police Department. ECF No. 11 at 1. He was arrested for intimidating a public officer, assaulting a

---

[1] Because Kristi Noem is no longer the DHS Secretary, the Clerk of Court is directed to substitute Markwayne Mullin in her place. Likewise, because Pamela Bondi is no longer the Attorney General, Todd Blanche is substituted in her place.

[2] Respondent John Mattos separately filed a response, taking no position on the habeas or bond relief sought. *See* ECF No. 13.

[3] Though the petitioner's response is docketed as a reply, it is both an opposition to the motion to dismiss and a reply in support of his petition. ECF No. 14. I do not require a reply from the respondents related to their motion to dismiss to render my decision.

[4] The I-213 form provides that on May 10, 2001, an IJ or DHS official granted Miranda-Vazquez voluntary departure to Mexico, and on May 11, 2001, he voluntarily departed to Mexico. ECF No. 11-1 at 8. On August 17, 2004, ICE encountered Miranda-Vazquez illegally present in the U.S. and granted him voluntary return to Mexico. *Id.* That same day, he returned to Mexico. *Id.* He later reentered within the last seven years at an unknown location and time. *Id.*

protected person, and resisting a public officer. ECF No. 11-1 at 7. He was then ordered removed on January 28, 2026. ECF No. 10 at 2;  IJ order, Resp'ts' Ex. A, ECF No. 11-1 at 15–18. His right to appeal was reserved. *Id.* at 18. On February 24, 2026, he appealed the removal order to the Board of Immigration Appeals (BIA). ECF No. 10 at 2; Notice of appeal, Resp'ts' Ex. A, ECF No. 11-1 at 19. Miranda-Vazquez appeared before an immigration judge (IJ) for a bond hearing, where the IJ summarily denied his bond, indicating it could not be granted. ECF No. 10 at 2, 5. The petitioner asserts that the IJ did not make a finding that he was a flight risk nor a danger to the community. *Id.* at 5. As provided by the respondents, the appeal remains pending before the BIA. ECF No. 11 at 2; ECF No. 11-1.

As a result, Miranda-Vazquez brings this petition asserting: (1) the respondents violated his Fifth Amendment due process rights by detaining him without a bond hearing; (2) a noncitizen possesses a protected liberty interest in continued freedom, and due process requires a bond-hearing before he could be lawfully detained; and (3) application of *Mathews v. Eldridge* factors confirms that a bond hearing was constitutionally required. ECF No. 10.

## II.   Legal authority

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### III.    Discussion

#### A.    Administrative exhaustion is waived, and this court has jurisdiction.

As a threshold matter, I first address whether this court has jurisdiction to hear the writ of habeas corpus petition. The respondents move to dismiss the first amended petition, asserting that this court lacks jurisdiction because the petitioner has not requested a bond hearing from an immigration judge. ECF No. 12 at 2. To support their position, the respondents cite *Martin v. United States*, 2026 U.S. Dist. LEXIS 76688 (D. Nev. Apr. 6, 2026), and argue that, in *Martin*, the court denied the petition as premature because the petitioner had exercised his right to appeal the denial of his bond determination hearing. *Id.* But a full reading of *Martin* indicates that the court concluded it lacked jurisdiction because the appeal to the BIA remained pending, not merely because the petitioner chose to exercise the right to appeal.[5] Here, the respondents fail to address why waiver of administrative exhaustion would not apply.

In opposition to the respondents' motion, Miranda-Vazquez argues that the administrative exhaustion requirement should be waived because of futility and irreparable harm. ECF No. 14. He contends that the respondents disregard immigration policy, so any attempt to obtain a bond hearing would be futile. *Id.* at 2, 4.[6] He further asserts that, because of this futility, he would suffer irreparable injury without the court's intervention. *Id.* at 4. The petitioner argues that, in the *Matter of Hurtado*, 29 I. & N. Dec. 216, 218 (BIA 2025), the BIA adopted the federal government's new interpretation of 28 U.S.C. § 1225(b)(2) and held that IJs lack authority to consider bond for any individual who entered the country without inspection. *Id.* 4. In essence, Miranda-Vazquez contends that, because of *Hurtado*, any request for a bond

---

[5] I also note that *Martin* is distinguishable because in *Martin*, the petitioner did not raise arguments related to whether waiver of administrative exhaustion applied prior to seeking a motion to reconsider. *See* Case No. 2:26-cv-00388-CDS-NJK. Here, Miranda-Vazquez indeed does raise those arguments in opposition to the federal respondents' arguments. As such, I address those arguments.

[6] Because I find that waiver of administrative exhaustion applies, I do not address the petitioner's related arguments addressing the *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007) factors.

3

hearing would be denied. *Id.* He also argues that his continued unconstitutional detention would result in irreparable harm. *Id.* at 5.

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Administrative exhaustion may be waived when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). "The **party moving** the court to waive prudential exhaustion requirements **bears the burden** of demonstrating that at least one of these *Laing* factors applies." *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025) (emphasis added).

I find that administrative exhaustion should be waived for two reasons. First, I agree with the petitioner that his appeal would be futile. *See Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it is very likely what [the BIA's] result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required."). Here, Miranda-Vazquez has met his burden of showing that seeking a bond hearing would be futile in light of the BIA's adoption of *Hurtado*.

Second, because more than six months have elapsed since Miranda-Vazquez was detained on July 29, 2025, I find that his continued detention would result in irreparable harm. This circuit has held "that waiver was appropriate in the case of an alien who challenged the indefinite length of his detention pending removal rather than his removability." *Laing*, 370 F.3d at 1001; *see also Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003); *Ali v. Ashcroft*, 346 F.3d 873 (9th Cir. 2003). Indeed, other courts have held that "the potential for irreparable harm to [the] Petitioner, in the form of continued unlawful denial of [bond] hearings for potentially four months or more," was so great that waiver of exhaustion requirement is appropriate. *See Villalta v. Sessions*,

4

2017 U.S. Dist. LEXIS 162981, at *9 (N.D. Cal. Oct. 2, 2017); *Cortez v. Sessions*, 2018 U.S. Dist. LEXIS 51007 (N.D. Cal. Mar. 27, 2018); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (finding irreparable harm in continued detention of noncitizens who would likely be granted conditional release if afforded a bond hearing); *Lozano Rosales v. Simon*, 2026 U.S. Dist. LEXIS 50660, at *14 (E.D. Va. Mar. 11, 2026) (observing that the federal respondents had "not advanced any compelling argument for the proposition that [the petitioner] should be required to appeal to the BIA before seeking relief" in a habeas proceeding, and refusing to require the petitioner to "sit in an ICE detention facility for months on end while he awaits a BIA decision"). Because I find that waiver of the administrative exhaustion requirement is warranted, I deny the respondents' motion to dismiss and turn to Miranda-Vazquez's requested relief in his first amended petition for writ of habeas corpus.

**B.   The petitioner is subject to § 1226(a), not § 1225(b)(2)(A).**

The petitioner asserts that his detention is governed by 8 U.S.C. § 1226 because the IJ never conducted an adequate bond hearing, he was ordered removed, and the appeal of that order remains pending. ECF No. 10 at 5. Since there is no administrative final order of removal, he argues that 8 U.S.C. § 1226(a) applies. *Id.* He contends that his ongoing detention violates his due process rights because he entitled to notice and a meaningful opportunity to be heard before an IJ. *Id.* at 6. The petitioner seeks a court order releasing him from detention and enjoining the respondents from re-detaining him unless they provide a constitutionally adequate bond hearing before an IJ. *Id.* at 9.

The respondents argue that 8 U.S.C. § 1225(b)(2)(A) applies to the petitioner and that he is subject to mandatory detained. ECF No. 11. The respondents acknowledge the court's prior ruling related to the respondents' new interpretation of § 1225,[7] but they do not waive their position that § 1225 should apply. *Id.* at 2. To support their position, the respondents cite

---

[7] The court construes this to be in reference to the court's ruling in *Medina v. Mattos*, 2026 U.S. Dist. LEXIS 193, at *5–11 (D. Nev. Jan. 4, 2026).

*Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), and *Avila v. Bondi*, 2026 U.S. App. LEXIS 8744 (8th Cir. Mar. 25, 2026), arguing that the petitioner entered the U.S. without inspection and is an applicant for admission who is lawfully mandatorily detained under § 1225(b)(2)(A). *Id.* at 3. I find the respondents' arguments unpersuasive.

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Section 1226(a) on the other hand states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole . . . .

8 U.S.C. § 1226(a). The plain language of these provisions indicates that both § 1225 and § 1226 govern the detention of non-citizens pending removal proceedings. The difference is that § 1225 provides for mandatory detention, whereas § 1226 allows for the release of the non-citizen on conditional parole or bond.

"A statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *Corley v. United States*, 556 U.S. 303, 314 (2009). "When interpreting a statute, the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation omitted). But "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 576 U.S. 473, 486 (2015) (citation omitted). And "the words of a statute must be read in their context and with a view to their place in the overall

statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). The court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

As a threshold matter, § 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible **arriving aliens**; referral for hearing." 8 U.S.C. § 1225 (emphasis added). This title "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring). And § 1225(b)(2)(A) provides for the detention "of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Important here, the INA defines an "applicant for admission" as "[a]n alien present in the United States who **has not been admitted or who arrives in the United States**" *See id.* at § 1225(a)(1) (emphasis added). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See id.* at § 1101(a)(13). The word "entry" is not defined in the INA. *See generally id.* at § 1101. But the dictionary definition of "entry" is "the right or privilege of entering" or "the act of entering." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry (last visited April 30, 2026). "Entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre*, 14 I. & N. Dec. 467, 468 (BIA 1973)). The phrase "seeking admission" is also undefined in the statute. The dictionary definition of "seeking" is "ask[ing] for." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking (last visited April 4, 2026). And the word "seeking" "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (citations omitted).

The respondents' interpretation of § 1225 would render the qualifier "seeking admission" in the statute entirely unnecessary and therefore improper. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted). Given Congress's decision to use different terms in § 1225—i.e., "applicant for admission" and "alien seeking admission"—I presume that Congress intended these phrases to mean different things. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute . . . different terms usually have different meanings." (citation omitted)); *see also Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025); 8 U.S.C. § 1225(a)(2)(3) (reasoning that Congress's decision to include the word "arriving," and references to methods of physical arrival, such as "stowaways" and "crewmen," in § 1225 shows Congress's intent to address noncitizens arriving "at a border or port of entry.").

In contrast, § 1226 is titled: "Apprehension and detention of aliens." 8 U.S.C. § 1226. "That Congress separated removal of arriving aliens," as set forth in § 1225, "from its more general section for 'Apprehension and detention of aliens,'" as set forth in § 1226, "implies that Congress enacted § 1225 for a specific, limited purpose." *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing *Dubin v. United States*, 599 U.S. 110, 122 (2023)). As the U.S. Supreme Court explained in *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), § 1225 is part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible," whereas "[s]ection 1226 generally governs the process of arresting and detaining . . . aliens [already living within the United States] pending their removal." *Id.* at 288. Thus, *Jennings* differentiated between non-citizens initially arriving to the United States who are governed by § 1225, and non-citizens already present in the country who are governed by § 1226. *Id.* at 288–89.

The respondents rely on a recent Fifth Circuit decision to support their position that Miranda-Vazquez is detained under § 1225. ECF No. 11 at 3–4 (citing *Buenrostro-Mendez*, 166 F.4th 494). But Miranda-Vazquez is not actively seeking to lawfully cross into the territorial limits of the United States because he has already entered the United States and was previously granted voluntary departure in 2001 and 2004. *See generally* 11-1 at 8.

Because I find that Miranda-Vazquez's detention is governed by § 1226(a), not § 1225(b)(2)(A), his current detention under § 1225(b)(2)(A) violates his Fifth Amendment due process rights.[8] Accordingly, the petition for writ of habeas corpus is granted in part, so the petitioner is entitled to a constitutionally sufficient bond hearing under 8 U.S.C. § 1226(a). The respondents must provide him with one within one week of the entry of this order.

**IV.    Conclusion**

IT IS HEREBY ORDERED that the petitioner's first amended petition **[ECF No. 10] is GRANTED in part for the reasons set forth in this order.**

IT IS FURTHER ORDERED that the respondents are required to give the petitioner a bond hearing, and this bond hearing must occur by May 8, 2026.

IT IS FURTHER ORDERED that the parties must file a status report no later than May 15, 2026, advising the status of compliance with this order. The status report must include the parties' position regarding whether this matter should remain open or closed.

IT IS FURTHER ORDERED that the respondents' motion to dismiss **[ECF No. 12] is DENIED.**

The Clerk of Court is kindly instructed to substitute Markwayne Mullin for Kristi Noem and Todd Blanche for Pamela Bondi.

Dated: May 1, 2026

_____
Cristina D. Silva
United States District Judge

---

[8] Because I grant relief on this basis, I do not address Miranda-Vazquez's *Mathews* analysis.

9